O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW B., <br><br>  Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>  Defendant. | Case No. 8:20-cv-02383-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

In March 2017, Plaintiff Andrew B. ("Plaintiff") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of December 1, 2008, at age 21, with a last date insured ("LDI") of March 31, 2015. AR 828-36. On October 17, 2019, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, testified along with a medical expert ("ME") David Peterson, M.D., and a vocational expert ("VE"). AR 537-65.

On January 9, 2020, the ALJ issued an unfavorable decision. AR 11-31. The ALJ found that Plaintiff suffered from the severe, medically determinable impairments ("MDIs") of "bipolar disorder and substance disorder present and

material." AR 17. The ALJ found that with substance abuse, Plaintiff's mental MDIs satisfied Listing 12.04. AR 17-18. Without substance abuse, however, Plaintiff would have the residual functional capacity ("RFC") to work at all exertional levels with a restriction to "simple repetitive tasks with only occasional interaction with coworkers, supervisors, and the general public." AR 20.

Based on this RFC and other evidence, the ALJ found that Plaintiff could work as a day worker, store labeler, or floor waxer. AR 25. The ALJ concluded, "Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." AR 25.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ erred in rejecting the work-preclusive opinions of Plaintiff's treating psychiatrist, Binna Chahal, M.D.

## III.
## DISCUSSION

A. **Rules Governing the ALJ's Evaluation of Medical Opinions.**

An ALJ must consider all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). For applications filed before March 27, 2019, like Plaintiff's, the regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

The Social Security Act provides that a claimant "shall not be considered disabled … if alcoholism or drug addiction would … be a contributing factor material to the … determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). To determine whether a claimant's drug addiction and alcoholism is material, the test is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations … would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). The claimant bears the burden of proving that substance use is not a material contributing factor to his disability. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007).

B. **Summary of the Medical Opinion Evidence.**

In January 2018, State agency consultant Phaedra Caruso-Radin, Psy.D., reviewed Plaintiff's medical records and observed that they were "marked by continued meth use. However, when not using is cog[natively] intact. Overall, without DA&A [drug abuse and alcoholism] the [Plaintiff] can complete srts [simple repetitive tasks] at least." AR 608.

In October 2018, Plaintiff underwent a psychological consultative examination ("CE") with Charlene K. Krieg, Ph.D. AR 1723-30. Plaintiff reported a history of using cannabis, methamphetamine, and mushrooms, but he had not used drugs for ten months. AR 1724. Dr. Krieg administered a variety of tests and concluded that Plaintiff displayed average intellectual functioning, scored in the "normal to mild deficit range" on tasks involving attention/concentration, and did not have any mental impairments that would limit his ability to perform simple, repetitive work tasks or complete a normal work schedule. AR 1727.

On September 25, 2019, treating psychiatrist Dr. Chahal authored a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment ("MSS"). Dr. Chahal diagnosed Plaintiff with Bipolar I disorder only. AR 2339. Dr. Chahal described Plaintiff's bipolar symptoms as including low energy, poor concentration, neglected self-care, social withdrawal, poor impulse control, aggression, and "manic episodes that last several days and had resulted in him being hospitalized." AR 2239. Dr. Chahal found that Plaintiff had "extreme" or "marked" limitations in nearly every area of mental functioning, including "marked" limitations on carrying out "simple 1 or 2 step instructions," understanding information, and remembering information. AR 2340-41. Dr. Chahal opined that substance abuse did not contribute to "any" of Plaintiff's limitations. AR 2341.

At the October 2019 hearing, ME Dr. Peterson first asked whether the record contained evidence of any sustained period of sobriety. Plaintiff's counsel referred

him to records from Plaintiff's "most recent hospitalization" when Plaintiff tested positive for marijuana. AR 543 (referring to May-June 2019 hospitalization at UCI precipitated by marijuana use [AR 2342-2405]). Counsel also referred to Plaintiff's subsequent representations to Dr. Chahal about his reduced cannabis use. See AR 2432 (On 5/24/19, Plaintiff reported using cannabis every day.); AR 2426 (On 7/31/19, Plaintiff reported using cannabis twice since discharge from UCI.); AR 2420 (On 9/25/19, Plaintiff reported last using marijuana "three weeks prior."). Counsel ultimately agreed there was no evidence of sustained sobriety, to which Dr. Peterson replied, "I just wanted to make sure that I didn't overlook anything." AR 544.

Dr. Peterson next testified that Plaintiff's cannabis use exacerbated his mood instability. AR 545. Dr. Peterson testified that Plaintiff's drug abuse caused marked functional limitations, but Plaintiff had no observable functional limitations when his drug abuse was in remission, per Dr. Krieg's CE findings. AR 545-47. Dr. Peterson opined that without drug abuse, Plaintiff had the "cognitive capacity to complete simple, repetitive tasks." AR 546.

Plaintiff's counsel asked Dr. Peterson about Dr. Chahal's MSS. AR 548. Dr. Peterson agreed with assigning a Global Assessment of Functioning score of 35 or 40 "given that substances are still in the picture." AR 548. When counsel pointed out that Dr. Chahal had not diagnosed Plaintiff as suffering from a substance abuse disorder, Dr. Peterson commented, "That's unusual." AR 548. He added, "The treating record is really clear about the three substances being diagnosed." AR 548. Dr. Peterson cited progress notes written by Dr. Chahal reflecting diagnoses of "cannabis dependence, alcohol abuse, [and] other stimulant abuse" in additional to bipolar disorder. AR 550-51. Finally, he testified that "the science that cannabis, for people with bipolar, can increase mood instability and cause psychosis …that research is crystal clear." AR 549-50. He also opined that cannabis use also "lowers cognitive functioning in testing, and … affects memory,

and concentration, and, and motor speed." AR 552.

At the October 2019 hearing, Plaintiff testified that he last used cannabis two months earlier, but he did not feel any better as a result of his two-month abstinence; he felt depressed. AR 553. He had experienced manic episodes without marijuana usage, but "usually" the manic episodes were triggered after he "smoked for a certain amount of time" then "cut it off cold turkey." AR 556. His mental impairments do not cause any difficulties driving. AR 555.

C. **The ALJ's Treatment of the Medical Opinion Evidence.**

The ALJ gave "great weight" to the opinions of Dr. Peterson as consistent with the "record as a whole," including Plaintiff's treating progress notes and his testimony that he "is able to drive, meditate, and go to the movies." AR 22.

The ALJ gave "little weight" to Dr. Krieg's opinions, endorsing her test results but finding that she had overstated Plaintiff's RFC by not assessing any functional limitations caused by mental MDIs. AR 19, 21, 23.

The ALJ gave "some weight" to Dr. Caruso-Radin's opinions, finding her opinion that Plaintiff could sustain simple, repetitive tasks consistent with other evidence. The ALJ disagreed with Dr. Caruso-Radin's failure to propose any RFC restrictions on Plaintiff's social interactions. AR 23.

Finally, the ALJ gave "little weight" to Dr. Chahal's MSS. AR 23. As reasons, the ALJ first cited inconsistency between the "numerous marked and extreme limitations" indicated in the MSS and Dr. Chahal's own mental status examination ("MSE") findings, which the ALJ characterized as "generally normal … except for depressed mood and at times impaired concentration and memory …." AR 23. As a second reason, the ALJ also wrote, "Further, despite consistently reporting substance abuse disorders in the medical notes, Dr. Chahal failed to mention a diagnosis of substance abuse in this opinion." AR 23.

D. **Analysis of Claimed Error.**

Plaintiff contends that the ALJ failed to give specific and legitimate reasons

supported by substantial evidence for rejecting Dr. Chahal's opinions in favor of Dr. Peterson's. (JS at 8.) In challenging the ALJ's first reason, Plaintiff focuses on arguing why Dr. Chahal's MSE findings were not "generally normal." (JS at 6-8.) But the real issue is whether substantial evidence supports the ALJ's finding of inconsistency between Dr. Chahal's MSS and MSE findings. It does. While the MSEs note the existence of some mild or moderate psychological symptoms, they also note many normal findings and fail to document any extreme symptoms, as partially summarized in the chart below.

| AR | Date | MSE Findings |
|---|---|---|
| 1701-02 | 1/27/17 | Normal but for "fair" insight and judgment |
| 1696-97 | 3/22/17 | Same |
| 1693-94 | 5/3/17 | Same |
| 1690-91 | 5/31/17 | Same |
| 1687-88 | 6/29/17 | Same |
| 1874-75 | 4/5/18 | Same but "conc. was much improved" |
| 1871-72 | 5/3/18 | Same but "conc. was quite good" |
| 1868-69 | 6/6/18 | Same but "conc. has improved" |
| 1865-66 | 7/5/18 | Same but "conc. has improved" |
| 1862-63 | 8/1/18 | Same but "mood depressed" |
| 1859-60 | 9/5/18 | Same but "conc. has improved" |
| 1856-57 | 10/1/18 | Same but "conc. was not very good" |
| 1853-54 | 11/14/18 | Normal but for "fair" insight and judgment |
| 2426-27 | 7/31/19 | Normal but for "depressed" mood, impaired memory, "fair" concentration, insight, and judgment |
| 2420-21 | 9/25/19 | Normal but for "bland" mood, "constricted" affect, impaired memory, poor concentration, "fair" insight and judgment |

Such MSE findings, made over several years, are inconsistent with Dr. Chahal's MSS opinions of extreme or marked limitations in so many functional areas unrelated to drug use (AR 2340-41).

In challenging the ALJ's second reason, Plaintiff argues that Dr. Chahal's failure to mention substance abuse disorder as a diagnosis is unimportant, since Dr. Chahal opined that Plaintiff's drug use did not contribute to any of his functional

7

limitations. (JS at 8-9.) But Dr. Chahal's failure to list substance abuse disorder as a diagnosis in her MSS is yet another inconsistency between the MSS and treating records. See, e.g., AR 2420 (listing cannabis dependence, alcohol abuse, and stimulant abuse as diagnoses in September 2019, the same month when Dr. Chahal wrote the MSS). More fundamentally, Dr. Peterson's testimony provides substantial evidence on which the ALJ could rely to conclude that Plaintiff's drug abuse *did* diminish his functional capacity. The ALJ was justified in concluding that Dr. Peterson's opinions were more consistent with the overall record.

As the ALJ noted, Plaintiff experienced worsening symptoms with substance abuse. Plaintiff's medical records indicate that his concentration appeared to be "good" or "improved" when he denied drug and alcohol use (see, e.g., AR 1859-84 and chart above), but when he began using cannabis, his concentration appeared to deteriorate (see, e.g., AR 1853-57). Similarly, Plaintiff had good adherence to his treatment plan when not using substances, but his adherence appeared to falter when he began using cannabis. Compare AR 1859-60 (9/5/18: treatment adherence "good" but "started using Cannabis 1 week ago 2 to 3 bowls a day;" euthymic mood, appropriate affect, concentration improved) and AR 1853 (11/14/18: "uses a gram of Weed every day" and "may miss a pill here and there;" concentration "not very good").

Substance use was involved at the time of each hospitalization. When Plaintiff was hospitalized in July 2017, he admitted that he stopped taking one of his medications a week prior. AR 972. Plaintiff also said he had used cocaine twice a month a few months prior, and he had been smoking methamphetamine six times in six months. AR 18, 972, 986. He reported being manic and unable to sleep for three days, which also coincided with the time he most recently smoked methamphetamine. AR 972 (used meth three days prior).

Plaintiff was hospitalized again in August 2017, at which time it was noted Plaintiff had "worsening manic symptoms in context of medication non-adherence

and drug use." AR 1015.  He reported recent morphine, LSD, and marijuana use, as well as crystal methamphetamine a couple weeks prior and cocaine previously. AR 1005.  His condition improved after resuming medications.  AR 1015.

In early 2019, Plaintiff was using marijuana on a daily basis.  AR 2345, 2432 (May 2019: "Cannabis uses every day up to ½ gram or less").  When he was hospitalized at UCI in May 2019, he had smoked marijuana just hours earlier.  AR 2345.  He used substances less frequently after this hospitalization (AR 2420, 2426) and displayed symptom improvement, as observed by Dr. Krieg in October 2018 after an eight-month period of sobriety.  AR 1724-27.

Given this record, the ALJ did not err by adopting the opinions of Dr. Peterson who recognized that Plaintiff's drug use exacerbated his mental health symptoms (AR 545-47) over those of Dr. Chahal, who opined that Plaintiff's drug use did not contribute at all to the mental health symptoms that caused functional limitations (AR 2341).

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED:  August 11, 2022

_____
KAREN E. SCOTT
United States Magistrate Judge